## ALFRED HARLEY

### *v.*

## THE SANITARY DISTRICT OF CHICAGO.

*Opinion filed February 21, 1907—Rehearing denied April 11, 1907.*

1. APPEALS AND ERRORS—*what questions are settled by Appellate Court's judgment.* A judgment of the Appellate Court affirming a judgment for the defendant in an action for damages for forfeiting plaintiff's contract conclusively settles the questions of when the work was to begin, which depended entirely upon the facts proved; when notice was given to the plaintiff to begin work; that the forfeiture was not based upon a mistaken assumption of facts by the defendant, and that the plaintiff had not completed the portion of the work required by the contract.

2. SAME—*question of waiver is mixed question of law and fact.* Whether a sanitary district has waived its right to declare a forfeiture of the contract for excavation is a mixed question of law and fact, upon which the judgment of the Appellate Court, in an action at law, is conclusive.

3. INSTRUCTIONS—*when instruction that forfeiture was illegal is properly refused.* A general instruction to the effect that defendant's forfeiture of the plaintiff's contract was illegal and insufficient is properly refused where there is no dispute that the forfeiture was regularly declared, and where the question of its legality and sufficiency involves the determination of controverted questions of fact as to the progress of the work, its character, the alleged waiver by the defendant, and other matters in dispute.

4. CONTRACTS—*provision as to forfeiture construed.* Where a contract for excavation provides for a forfeiture upon the failure of the contractor in the matter of the progress of the work and the character of the work performed, a failure in either respect is a failure as to both, and the fact that the plaintiff may have complied with the contract as to the character of the work does not prevent a forfeiture if he has failed to make the progress which the contract requires.

5. SAME—*when time for beginning work is not question of law.* Where a contract for excavation requires the plaintiff to begin the main work when certain conditions, specified in the contract, existed, the question as to when such work should be begun depends upon the evidence as to the existence of the necessary conditions, and is a question of fact for the jury and not of law for the court.

6. SAME—*when question of effect of new contract is for jury.* Where the work on river diversion is taken out of the original con-

tract for canal excavation by a new contract, which contains nothing else affecting the original contract and expressly provides that nothing therein contained shall affect the rights of either party with reference to an existing controversy over the original contract, the question whether the performance of the new contract affected the progress of the work under the original contract is one of fact for the jury, no reference thereto having been made in the contract itself.

7. SAME—*when notice to begin work does not depend upon the weather conditions.* Where a contract for drainage canal excavation requires the contractor to begin work when notified by the other party, and provides that he shall bear the expense and damage from flooding and build at his own expense all levees necessary to protect the work, the fact that the weather conditions in the winter were unfavorable to beginning work and made the work unreasonably expensive does not require that the notice to begin work be delayed until a more convenient season.

8. SAME—*when plaintiff must prove that forfeiture of contract was wrongful.* One who alleges in his declaration in an action for damages for forfeiture of a contract that he did not perform the contract because it was wrongfully forfeited has the burden of proving that the forfeiture was wrongful, under the rule requiring a plaintiff to prove the allegations of his declaration.

9. SAME—*courts of law enforce contracts as made.* Courts of law enforce contracts as made, and, so far as it can be said to be a rule that such courts incline against forfeiture, the rule is never to be carried to the extent of relieving the parties from the terms of their contract.

10. SAME—*rule that forfeitures are not favored in law applies particularly to courts of equity.* The rule that forfeitures are not favored in law is peculiar to courts of equity; but even equity will not interfere with a forfeiture for breach of conditions or covenants where no clear estimate of damages or just compensation can be made.

11. SAME—*when refusal of instruction that forfeitures are not favored in law is proper.* In an action for damages for alleged wrongful forfeiture of a contract, an instruction which, stripped of all elements not fully covered by other given instructions, amounts merely to a declaration that forfeitures are not favored in law, is properly refused, as tending only to unjustly prejudice the defendant's case.

12. SAME—*when notice to begin excavation work does not depend upon question of title to the land.* The fact that at the time notice was given to a contractor to begin work upon drainage canal excavation the district had not acquired the title to the land does

not render the notice of no avail where there had been a condemnation proceeding, and where the contractor, without objecting, took possession of the land and continued his work without molestation or interference.

13. WAIVER—*what is not an improper modification of instruction as to waiver.* An instruction stating that knowledge of an act on which a forfeiture might be based will constitute a waiver is not improperly modified by making it read "full knowledge," etc., since there is no substantial difference between the terms "knowledge" and "full knowledge."

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

WING & WING, and EDWIN WHITE MOORE, (JOSEPH N. CARTER, of counsel,) for appellant.

E. C. LINDLEY, (JOHN BARTON PAYNE, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a suit in assumpsit commenced by appellant in the superior court of Cook county to recover damages suffered by him by reason of the alleged wrongful forfeiture by appellee of a contract entered into by the said parties, by which appellant undertook to excavate a section of the drainage canal extending from Willow Springs south-west six thousand feet. The contract was executed on July 12, 1892, and in addition to excavating the main channel plaintiff was to excavate a new channel for the Desplaines river for about three thousand feet of the distance for the purpose of confining that stream to the north-west side of the canal, and this was called the river diversion. The right of way of the main channel was covered, over the greater part of its surface, with a heavy growth of timber, which

the plaintiff was required to grub out, and all material so grubbed out which was of any value was to be his property. He was to build and construct, at his own expense, all levees necessary to protect the work, and all expenses and damages from flooding were to be borne by him. He was required to give his personal attention to the execution of the work and not to sub-let all or any part of it, and any sub-letting was to work a forfeiture of the contract, at the option of the defendant: Plaintiff agreed to begin work within thirty days after the execution of the contract, or as soon after the expiration of thirty days as defendant should acquire title to the necessary right of way and notify him to begin, and he was to carry on the work at such points and in such manner as the time and manner of procuring the right of way might render necessary. Only such work as building levees, changing river channels, grading road-beds, and other subsidiary work where the land had been acquired, was to be required of plaintiff until it was possible to open the main channel at the best point from which to execute the work. The contract was to be completed on or before April 30, 1896, but if plaintiff was not permitted to begin the main excavation on or before August 1, 1892, the time for the completion of the contract was to be extended as much after the time specified for its completion as the time of beginning the main work was subsequent to August 1, 1892. It was provided that the work done each month should not be less than such portion of the whole work as one month bore to the total number of months agreed upon for the completion of the whole work, counting the first four months after notice to begin as one month and the last two months before the date of completion as one month. The provision of the contract under which the forfeiture was declared is as follows: "In case the contractor fails to comply with the provisions of this contract as to progress and character of work, he shall be notified in writing, and thirty days after the giving of said notice the party of the first part may de-

clare this contract forfeited, if there is substantial failure to comply with its provisions." On November 26, 1892, notice was served on plaintiff by defendant to commence work on the river diversion. On December 17, 1892, the defendant notified him that it would be in possession on December 19 of the necessary land, and directed him to begin work at once on the main excavation. After receiving the notice of December 17 plaintiff made a contract for the construction of buildings for the accommodation of his men and teams and for the opening of a store. On January 10, 1893, he reported what he had done and promised to proceed as fast as possible. On January 18, 1893, he made a contract with Nelson Bleau for the grubbing and removal of the timber. That work was commenced the last of January, 1893, and in taking out the timber a considerable quantity of earth was removed, of which plaintiff procured an estimate and for which he was paid in February as for earth excavated. That contract was abandoned by Bleau, and plaintiff hired men and was engaged for nine months in doing the grubbing. In June, 1893, plaintiff began excavating earth with scrapers and shovels. He was also working on the river diversion, and had a controversy with defendant about extra payment for excavating hard-pan in that channel. In settlement of that difficulty the defendant took upon itself the construction of the river diversion, and a new contract was made on August 30, 1893, by which the provisions for that work in the original contract were eliminated and plaintiff was employed as superintendent of the work on the river diversion, and was to use his own implements and machinery and have fifteen per cent of the cost of the work. The river diversion was completed on November 16, 1893. The defendant was not satisfied with the rate of progress made by the plaintiff and claimed that it was not the rate required by the contract, and plaintiff made some promises, but the controversy continued, and on February 10, 1894, the defendant declared the contract for-

feited on account of the failure of plaintiff to comply with its provisions. This suit was begun on August 1, 1894, and the declaration alleged that the plaintiff was at all times ready and willing and offered to perform his contract, but the defendant illegally, wrongfully and improperly declared it forfeited and prevented him from performing it, whereby he suffered the damages alleged in the declaration. The case was twice tried. On the first trial the court instructed the jury to return a verdict for the defendant, which was done and judgment was entered. On appeal to the Appellate Court for the First District the judgment was reversed and the cause was remanded for another trial. On that trial a verdict was returned for the defendant, with the following special interrogatories submitted to the jury at the request of plaintiff, and their answers thereto:

"At the time notice was served on the plaintiff by the defendant, December 30, 1893, for the forfeiture of the contract, was the plaintiff behind in the amount of work required by the contract?—A. Yes.

"Was the character of the work bad?—A. Yes.

"Was the contract forfeited by the defendant because of the character of the work as well as lack of progress?—A. Yes."

Judgment for the defendant was entered, from which appellant took an appeal to the Appellate Court for the First District, and the branch of that court affirmed the judgment.

Many questions exhaustively argued by counsel for appellant have been conclusively settled in favor of appellee by the judgment of affirmance of the Appellate Court. The same arguments were addressed to the Appellate Court, and in this court counsel have added thereto comments on the opinion of the Appellate Court, insisting that the conclusions of fact reached by that court are contrary to the evidence. With those questions we have nothing to do. One such question is whether it was necessary to change the channel of the river to open the main channel at the best

point from which to execute the work, on which counsel say that much evidence was introduced on both sides. Counsel say that the court ought to have determined that the time for beginning the work was November 16, 1893, but that question depended entirely upon the facts proved, and unless the jury were misdirected as to the law the question has been finally settled. Other questions so settled are, that defendant had acquired title to the necessary right of way when notice was given to plaintiff to begin work; that the forfeiture was not illegal because based on a mistaken assumption of facts by the defendant; that at the time of the forfeiture the plaintiff had not done the portion of the work required by the contract, and that the defendant did not waive its right to declare a forfeiture. Most of these are pure questions of fact and the question of waiver is a mixed question of law and fact, as to which the judgment of the Appellate Court is final. (*Moerschbaecher* v. *Royal League,* 188 Ill. 9.) On this appeal we can only consider questions of law, and unless the court erred in giving or refusing instructions the judgment must be affirmed.

One of the alleged errors of law is, that the court refused to give a general instruction to the jury that the forfeiture of the contract was illegal and ineffectual. There was no dispute of the fact that the forfeiture was regularly declared, and the question whether it was legal and effectual or illegal and ineffectual involved the determination of the controverted questions of fact as to the rate of progress, the character of the work, the waiver, and other matters in dispute. The court did not err in refusing the instruction, which would have invaded the province of the jury to determine controverted questions of fact.

Relating to the same question of the forfeiture of the contract, it is argued that a forfeiture could only be declared for a joint delinquency by plaintiff in the progress and character of the work; that the evidence showed that no forfeiture could be declared on account of bad work, and that

defendant never undertook to forfeit the contract on that account. So far as the question is of any importance, we are compelled to differ with the Appellate Court in the construction of the provision for a forfeiture. That court decided on the first appeal that to justify a forfeiture of the contract the plaintiff must not only fail to comply with the contract as to the progress of the work but also as to the character of the work, and on the last appeal the Branch Appellate Court considered that construction binding upon the court. The provision is not for a forfeiture in case of a failure as to both particulars, but in case of failure to comply with the contract as to both. Plaintiff would not comply with the provisions of the contract as to progress and character of work unless he made the rate of progress required and the work was also of the character provided for. A failure to comply with the provisions of the contract as to either would be a failure to perform its provisions as to the two, and we see no ground for saying that he must fail as to the two provisions. He could not say that he had failed as to progress but had not failed as to the character of the work, and therefore had complied with the provisions of the contract as to progress and character of work. If the provision had been that there might be a forfeiture if plaintiff failed to comply with the provisions of the contract, perhaps no one would think that he might make default in all of the provisions except one and by performing that one prevent a forfeiture; and, of course, the construction is precisely the same where two provisions of the contract are specified. Although we regard the construction given to the contract on the first appeal as erroneous, the court on the last trial adopted that construction and construed the contract according to plaintiff's views. The evidence on that trial tended to prove a failure by plaintiff in both particulars. The jury found default as to both and that the contract was forfeited on both grounds. The court committed no error even under the construction adopted.

It is next insisted that November 16, 1893, should have been declared by the court as the time for beginning the work on the main excavation. That was not a question of law to be determined by the court, but was a question of fact for the jury under the evidence as to whether the conditions existed which required plaintiff to begin work. The instruction asked on that subject and refused would have been an invasion of the province of the jury.

Plaintiff asked the court to instruct the jury that in estimating the progress required of plaintiff the time required for the river diversion under the contract of August 30, 1893, should be considered. The court refused to give the instruction, and did not err in so doing.

The court, at the instance of the defendant, instructed the jury that the making of the special contract of August 30, 1893, did not relieve the plaintiff from his obligation to comply with the provisions of the original contract. The work on the river diversion was taken out of the original contract by the new one, and defendant performed that part of the work itself, paying plaintiff fifteen per cent of the cost for superintendence and tools. There was nothing else in the contract which in any way affected the original contract, and it contained a stipulation that nothing in it should interfere with or prejudice the rights of either party in reference to an existing controversy between them as to the original contract. Whether the fact that plaintiff was to furnish tools and machinery for the river diversion should have affected in any way the question of progress was for the jury, and the court could not properly instruct them upon that subject as a question of law. If there was any understanding about it, it was not in the written contract which the court was authorized to construe.

Plaintiff contends that defendant could not lawfully require him to begin work prior to July 1, 1893, because of the weather conditions in the winter, and asked an instruction that if the work could not be reasonably and conveni-

ently done and the physical conditions made it impossible or unreasonably expensive, plaintiff could not be compelled to begin work until the weather conditions were suitable. The court refused to give the instruction, and gave one at the instance of defendant that plaintiff was not entitled to delay the work by reason of a liability to overflow of the lands or the melting of snows. The contract provided that the plaintiff should build, at his own cost or expense, any and all levees necessary to protect the work and should bear all expenses and damages on account of flooding. It is conceded by counsel that after the work was once begun the plaintiff was bound to perform it regardless of weather conditions, which he should have taken into account in making his contract, and we do not see why the same rule does not apply as to the work which he agreed to begin when notified. He must have known that the ground would be frozen in winter and that the other physical conditions would in all probability exist.

The court instructed the jury that the burden of proof was on the plaintiff to show, by a preponderance of the evidence, that the contract was wrongfully forfeited in order to enable him to recover. He alleged that fact in his declaration, in which he set out that he did not perform the contract because it was wrongfully forfeited, and we do not see any reason why the rule requiring him to prove the allegations of his declaration does not apply.

The court instructed the jury that if it was possible for plaintiff to open the main channel at the best point from which to execute the work he was bound to begin work upon the giving of the notice and to make the progress required by the contract, and it is urged that this instruction was erroneous because the title to the lands had not been acquired when the notice was given. The evidence that the ground was clear for appellant to work from the time the notice was given, and that he was put in possession and there was no interference whatever with him, was uncon-

tradicted, so that it made no difference to him what was the
state of the legal title.   It is also urged that the instruction
ignored the fact thàt there was a waiver of the delinquency
in doing the work.  The question whether there was a waiver
of the right to declare a forfeiture was not within the scope
or purpose of the instruction, and it was not necessary that
it should be included in the instruction.

The court gave an instruction that if plaintiff stated to
defendant that he was unable to proceed with the contract
unless a new classification of materials was made or he was
allowed to assign the contract or associate with himself
other persons for its performance, the jury might take that
fact into consideration, with all the other facts in the case,
to determine whether or not plaintiff was in good faith en-
deavoring to carry out the contract.  The instruction called
particular attention to one fact and was somewhat objection-
able for that reason, although it said that the fact was to be
considered with all the other evidence in the case, but we
think the instruction was rather favorable to the plaintiff
than otherwise.  If the question of good faith was involved,
the fact stated tended to show that plaintiff was acting in
good faith but unable to perform the contract.

The court, at the request of the plaintiff, gave instruc-
tions covering these propositions: That if the plaintiff had
performed as many forty-firsts of the work required by the
contract on December 1, 1893, as there were months be-
tween the time he was required to begin work on the main
channel and said December 1, 1893, counting the first four
months as one month, then the defendant had no right to
forfeit the contract for failure to make the required rate of
progress; that all work done prior to the time he was re-
quired by the contract to begin work should be reckoned in
estimating the rate of progress; that the removal of trees
and stumps was work required by the contract, and the
proper and reasonable time of such work in proportion to
the whole amount of work to be done should be allowed to

plaintiff in estimating the whole amount of the work (which was given in two instructions); that if it was not possible to open the main excavation at the best point for the execution of the work until after the completion of the river diversion, the plaintiff was not required to begin the main excavation until November 16, 1893; that in construing the provisions of the contract the word "possible" was to be construed as meaning "practicable;" that although at the time of the forfeiture plaintiff had not made the progress required by the contract, defendant had no right or power to declare the contract forfeited, and the forfeiture was illegal unless plaintiff failed to comply with the contract in regard to the character of the work and the contract was also forfeited for that reason; that to justify a forfeiture for sub-letting it must not only be shown that the defendant had the right to forfeit the contract for that reason, but that it did declare the forfeiture on that ground, and the jury should take into consideration whether the defendant knew of the sub-letting at the time of the forfeiture, and that if the defendant did any act indicating a purpose to permit the further performance of the contract after the defendant had full knowledge of an act by the plaintiff on which a forfeiture might be based, such act of the defendant would constitute a waiver of such cause of forfeiture.

Much complaint is made of the refusal of the court to give an instruction requested by the plaintiff, as follows:

"The jury are instructed that forfeitures are not favored in law and must be strictly construed, and that it is not sufficient to show that the defendant had the right to declare a forfeiture, but that the evidence must show that the defendant actually did declare the contract forfeited upon the grounds under which a right to forfeiture is claimed to exist."

It will be seen from the foregoing that the court gave to the jury everything contained in that instruction except that forfeitures are not favored in law, and the court was right

in declining to state that proposition, which, if correct, could have had no other effect than to prejudice the defense. Courts of law enforce contracts as made, and so far as it can be said that they incline against forfeitures, the rule is never carried to the extent of relieving parties from the terms of their contract. (*Village of Morgan Park* v. *Gahan,* 136 Ill. 515.) The rule stated, however, is peculiar to courts of equity and one of the grounds of equitable jurisdiction. Equity will not interpose to enforce or carry into effect a forfeiture, and will frequently prevent forfeitures where compensation can be made. In equity the harsh remedy of forfeiture yields to compensation when fair dealing and good conscience seem to require it; (*Ebert* v. *Arends,* 190 Ill. 221;) but even in a court of equity the test whether a forfeiture will be relieved against is whether compensation can or cannot be adequately made for breaches of obligations. (1 Pomeroy's Eq. Jur. sec. 435.) Courts of law have adopted, to some extent, the doctrine of equity in cases where a penalty is provided for, by giving judgment for the amount of damages actually sustained, or by giving judgment for the penalty, to be satisfied by the payment of such damages. A court of equity will never interfere in cases of forfeiture for breaches of covenants and conditions where there cannot be any clear estimate of damages or just compensation for such breaches. (2 Story's Eq. Jur. sec. 269.) In this case the work was the excavation of one section of the drainage canal to dispose of the sewage of the city of Chicago. The board of trustees of the defendant merely represented the public, and any loss occasioned by the failure to perform the contract would result to the public at large. It is beyond question that there could be no estimate of such damages or compensation therefor. The inconvenience to the public resulting from a failure to have the drainage canal excavated and open for disposing of the sewage could not be measured in dollars and cents, and as compensation could not be made for plaintiff's default, no rule of

226—15

law or equity would relieve him from the contract and no court would hesitate to give it effect according to its terms. The only effect of telling the jury that forfeitures are not favored in law would be to create an unjust prejudice against the defendant in the enforcement of its legal rights.

Plaintiff requested the court to instruct the jury that defendant could not claim a forfeiture on the ground that the character of the work was bad, and upon that question they must find for the plaintiff. Although the rule was erroneous it was given to the jury in another instruction. And this instruction was properly refused for the further reason that it would have invaded the province of the jury on a question of fact. There was evidence tending to show that the character of the work was bad, and the jury so found.

The court refused an instruction that if, when the notice of December 17, 1893, was given, the defendant had not acquired title to the right of way, the notice was of no avail and the plaintiff was not required to begin work by reason thereof. He made no objection to beginning the work because title was not acquired, and it was immaterial to him in any view of the case. There had been a condemnation and he took and held possession of the right of way, so that the court did not err in refusing the instruction.

The court modified the instruction as to waiver by inserting the word "full" before "knowledge." It stated that knowledge of an act on which a forfeiture might be based would constitute a waiver, and the court made it read "full knowledge." There was no substantial difference between the instruction as modified and before. If the defendant had knowledge of the cause of forfeiture at all it had full knowledge.

One instruction for the defendant stated if plaintiff sublet the work, or any part of it, he violated the contract and defendant had a legal right to forfeit it. It is urged that the jury might understand that instruction as referring to the sub-letting for the grubbing. That contract was soon

abandoned, and it is clear that the forfeiture was not on that ground, and the jury could not have so understood. There was evidence that appellant had sub-let the work of excavation to others, and the jury could not have been misled by this instruction.

Some other minor questions are raised as to instructions, but every question is fully covered by what we have said. The instructions as a series are fully as favorable to plaintiff as the law would permit.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER having been attorney for the sanitary district at the time of the execution and forfeiture of the contract, took no part in the consideration of this case.