## MOSSO v. LEE ET AL.

No. 2926

February 4, 1931.                    295 P. 776.

*Stevens, Henderson & Nolan,* for Appellant:

*Harley A. Harmon* and *Chas. Lee Horsey,* for Respondents:

## OPINION

By the Court, COLEMAN, C. J.:

This is a suit to quiet title to real estate. Decree was entered in favor of the defendants, and plaintiff has

appealed. We will refer to the parties as they were designated in the district court.

The material facts are as follows:

On June 8, 1927, one McLaurine and wife, the then owners of the land in question, entered into an agreement to sell the same to Hans Lee and Letty Spencer for the sum of $3,200, of which $500 was payable in cash, $150 payable July 15, 1927, and $150 on the 15th of each succeeding month until the full purchase price was paid; that the purchasers should pay all taxes and assessments lawfully levied upon said property, when due; that the first parties should execute a good and sufficient deed and place the same in escrow to be delivered to second parties upon the making of all payments as agreed. It was further agreed between the parties that time is of the essence thereof; that second parties take possession of said premises pursuant to said agreement.

Between June 8, 1927, and June 8, 1928, the second parties paid to said first parties on account of said purchase price the sum of $1,850, leaving a balance due of $1,350, and made improvements upon said premises of the value of $1,000.

On July 7, 1927, Hans Lee acquired all of the right and interest of said Letty Spencer in said lands. Prior to April 16, 1928, the plaintiff acquired all of the rights of said McLaurine and wife under said agreement. On the 16th of April, 1928, plaintiff and defendant Hans Lee entered into an agreement whereby an extension of time was given the said Hans Lee to make the payment falling due on the previous day. On June 11, 1928, McLaurine and wife conveyed the property to this plaintiff. On the 1st day of June, 1928, in anticipation of said conveyance the plaintiff and Hans Lee entered into an agreement whereby plaintiff agreed to convey to said Hans Lee, in consideration of the payment on or before April 15, 1929, of the sum of $1,350, interest, and taxes, promptly when due. In said agreement time was made the essence of the contract, and a provision was incorporated therein that in case of defendant's failure to make the payments promptly when due that he should forfeit

all rights in and to said property. Simultaneously with the execution of said agreement, a deed was executed to the defendant Hans Lee by the plaintiff and placed in escrow to be delivered upon full compliance with the terms of the contract.

Hans Lee failed to pay the 1928 taxes when due, amounting to about $30, and on January 15, 1929, failed to pay the quarterly interest due, amounting to $33.75. On February 12, 1929, plaintiff caused to be served upon the defendants a notice declaring their rights in and to said property forfeited. On the 15th of April, 1929, the date when the $1,350 was by the terms of the contract made payable, Hans Lee tendered to the plaintiff the sum of $1,350 plus interest to that date, together with the taxes accrued and penalties, with interest thereon, and demanded of said plaintiff a deed to the premises in question. The defendant Hans Lee took possession of said property pursuant to the contract with the McLaurines, and remaining continuously in possession thereof, the plaintiff, on July 11, 1929, instituted this suit, making the wife of Hans Lee a party defendant. Besides answering the complaint, the defendants filed a cross-complaint and prayed for a specific performance of the contract.

The trial court found the facts as above stated, and also found:

"The Court further finds that the failure of said Hans Lee to pay said taxes promptly when due and said installment of $33.75 interest when due on January 15, 1929, was due to inadvertence and carelessness on his part, and while he was careless and neglectful in regard thereto, such carelessness and neglect were not willful."

As a conclusion of law the court found that said Hans Lee should be in equity excused from said default and relieved from such attempted forfeiture, and all proceedings connected therewith.

In consequence of the findings and conclusions of law made by the court and the payment into court by the defendants to the credit of the plaintiff of the total amount found to be due to the plaintiff, a decree was entered in favor of the defendants as prayed.

The main contention of the plaintiff is that the court was not asked to declare a forfeiture, for the reason that that was a matter of agreement between the parties and had been declared and fully effected in accordance with the terms of their agreement before' the institution of this suit to quiet plaintiff's title.

In support of the contention plaintiff relies upon the Illinois authorities, and particularly upon the case of Summers v. Hedenberg, 198 Ill. App. 460. The supreme court of Illinois, in affirming the judgment of the lower court (Lang v. Hedenberg, 277 Ill. 368, 115 N. E. 566), observed that a court of equity may uphold a forfeiture declared by a party, but that it will not declare or enforce a forfeiture where it is harsh or inequitable to do so. The supreme court takes the position that the decree of the trial court should be based upon the equities of the particular case. Such is the clear holding of that court in Springfield, etc. v. Warrick, 249 Ill. 470, 94 N. E. 933, 935, Ann. Cas. 1912A, 187, where it is said:

"Forfeitures will be enforced by courts in clear cases, but they are not regarded with favor, and their prevention is within the protecting care of equity whenever· wrong or injustice will result from their enforcement. * * * When equity is applied to for the rescision, cancellation and delivery up of deeds or agreements, the court is not bound to pass upon the question as a matter of absolute right, but it is one within the sound discretion of the court, to be exercised in granting or refusing the relief, according to the court's own notion of what is reasonable and proper under the circumstances of the particular case. 'In all cases of this sort where the interposition of a court of equity is sought, the court will, in granting relief, impose such terms upon the party as it deems the real justice of the case to require, and if the plaintiff refuses to comply with such terms his bill will be dismissed. The maxim is here emphatically applied, he who seeks equity must do equity.' 2 Story's Eq. Jur. sec. 639; O'Connell v. O'Conor, 191 Ill. 215, 60 N. E. 1063. Where the compensation can be made in money, courts of equity will relieve against forfeitures and compel the party to accept reasonable compensation

in money. Gallaher v. Herbert, 117 Ill. 160, 7 N. E. 511; 4 Kent's Com. (14th ed.), *130. The application of this principle in relieving against penalties or forfeitures in chancery must always depend upon the question whether compensation can or cannot be ascertained. Where there can be a clear estimate of damages or just compensation for breaches of conditions or covenants, courts of equity will relieve against forfeitures or penalties and require such compensation to be made. Harlev v. Sanitary Dist., supra [226 Ill. 213, 80 N. E. 771]; 1 Pomeroy's Eq. Jur. (2d ed.), sec. 381; Watson v. White, 152 Ill. 364, 38 N. E. 902. * * * "

We do not see that there is any difference in the view there expressed and that expressed by the Supreme Court of the United States in Cheney v. Libby, 134 U. S. 78, 10 S. Ct. 498, 502, 33 L. Ed. 823, where the court said:

"Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it (Hennessey v. Woolworth, 128 U. S. 438, 442 [9 S. Ct. 109, 32 L. Ed. 500]), may and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions." Citing: Seton v. Slade, 7 Ves. 265; Levy v. Lindo, 3 Merivale 81; Hudson v. Bartram, 3 Madd. 440; Lilley v. Fifty Associates, 101 Mass. 432; Potter v. Tuttle, 22 Conn. 512; Ahl v. Johnson, 20 How. 511, 15 L. Ed. 1005.

Other authorities sustaining this rule are: Mound Mines Co. v. Hawthorne et al., 173 F. 882, 97 C. C. A. 394; Shouse v. Doane, 39 Fla. 95, 21 So. 807; Burroughs v. Jones, 79 Miss. 214, 30 So. 605.

Learned counsel for appellant, in support of their contention, direct our attention to what they call the rule in California, quoting:

"A court of equity has no more right than a court of law to dispense with an express stipulation of the parties in regard to time in contracts of this nature." Citing Grey v. Tubbs, 43 Cal. 359.

While the court in that case stated the general rule substantially as quoted, it nevertheless recognized the exception to the rule, for it said: "When it also appears that the purchaser is without excuse for his delay, the Courts will not relieve him from the consequences of his default." Thus the court intimated that if there is excuse for the delay a court of equity will grant relief. The same court, in Steele v. Branch, 40 Cal. 3, expressly recognized the propriety of granting relief from a default where sufficient excuse is shown. The court said:

"Even though the contract contain a provision for forfeiture in case of a failure to perform strictly in point of time, nevertheless, a Court of equity will examine the whole contract in the light of the surrounding circumstances, to ascertain whether it was the real intention of the parties that the party in default should lose the right secured to him by the contract. A stipulation to the effect that in case of a default a party shall lose his rights under the contract, is often inserted by way of penalty, merely with a view to induce a more prompt performance, and not with the intention that a failure strictly to perform, in point of time, shall work an absolute forfeiture. When such appears to have been the intention of the parties, if the party in default afterward tenders a performance promptly and with reasonable diligence, and if the other party has suffered no damage by the delay, and particularly if the property has not materially enhanced in value during the time of the delay, a Court of Equity will not enforce the forfeiture, but will decree a specific performance, notwithstanding the default, provided it appears that the party in default has acted in good faith and gives some reasonable excuse for the delay."

In the case of Glock v. Howard & Wilson Colony Co.,

123 Cal. 1, 55 P. 713, 716, 43 L. R. A. 199, 69 Am. St. Rep. 17, the court said:

"It has heretofore been said that in certain cases equity will relieve the vendee from the effect of a breach of his covenant to pay upon a day certain. * * * In the case of the vendor, where the vendee's breach is merely a failure to pay money, under the general principle that damages for a failure to pay money can usually be accurately measured, and compensation made by the allowance of interest, courts have inclined to disallow stipulated damages to the vendor, and have limited him to compensatory damages actually proved. But, where the breach of the vendee is of some act not thus readily to be measured, stipulated damages will be allowed the vendor. Tingley v. Cutler, 7 Conn. 297; Leggett v. Insurance Co., 53 N. Y. 394; Decamp v. Feay, 5 Serg. & R. [Pa.] 323 [9 Am. Dec. 372]; Remington v. Irwin, 14 Pa. 143; Grigg v. Landis, 21 N. J. Eq. 494. But while equity will thus, in the cases indicated, refuse to recognize stipulated damages, and will often permit a vendee in default to excuse his breach as to the time of payment, and, after excuse made, compel the vendor to perform, it does not do so arbitrarily. The vendee must always show equitable grounds for relief before equity will interpose. Pom. Spec. Perf. sec. 335."

The general rule is stated in 21 C. J. 98:

"Equity, always expressing its abhorrence of penalties, first interposed to relieve against them * * *. At first jurisdiction was not asserted beyond relieving, where the penalty was designed only to secure the payment of money; but in Lord Thurlow's time it was held that relief might be given when the penalty was inserted to secure the enjoyment of any collateral object. It has since been generally considered that the jurisdiction extends to all cases, where adequate compensation can be made."

Some courts have gone to even greater lengths. For instance, it was said in North Jersey St. Ry. Co. v. Inhabitants of Township of South Orange, 58 N. J. Eq. 83, 43 A. 53, 56:

"Relief against penalties and forfeitures is a favored jurisdiction of a court of equity, and it rests upon the ground that it is contrary to the first principles of justice for one party to exercise a legal right which it holds against another party, where the result is to obtain from that party a large sum of money as compensation for injuries which are manifestly much less than the amount exacted."

And in Bliley v. Wheeler, 5 Colo. App. 287, 38 P. 603, 606, one party claimed a forfeiture for nonpayment of an installment of $17, after having received nearly $300. The court granted relief, saying that "courts, in such cases, do not look complacently, under such circumstances, upon what might be a technical forfeiture at law, but clearly inequitable in a case of this kind."

■ Whatever may be the correct view to take of the expressions of the courts taking the position stated in the last two cases mentioned, there can be no doubt in this age, even where time is of the essence of a contract to convey real estate, coupled with a provision of forfeiture, but that a court of equity will grant relief from a default and a declaration of forfeiture if the condition be subsequently performed, or tendered, without unreasonable delay, where no circumstances have intervened that would render it unjust or inequitable to give such relief.

■■ The lower court found as a fact that though said Lee was careless and neglectful in regard to making of the payments, such carelessness and neglect were not willful. Since this case is before us upon the judgment roll alone, we must assume that the evidence justifies the findings; hence the only question open for determination is whether the finding that such carelessness and neglect was not willful is sufficient to sustain the conclusion to the effect that the defendant should be excused from such default and relieved from the declaration of forfeiture made by the plaintiff.

In Garner v. Hannah, 6 Duer (13 N. Y. Super. Ct.) 262, the court said:

"The court has equitable as well as legal jurisdiction

of the actions of which it has cognizance, and I take the rule to be well settled, that equity will readily, where the breach is not willful, relieve from a forfeiture or penalty, as where the stipulation is intended as a mere security for the payment of money, and precise compensation can be made.

"The following authorities will be found to sustain this doctrine: Wafer v. Mocatto, 9 Mod. R. 112; Sanders v. Pope, 12 Ves. R. 282; Davis v. West, 12 Vesey R. 475; Hill v. Barclay, 18 Vesey R. 55; Reynolds v. Pitt, 19 Vesey R. 133; Baxter v. Lansing, 7 Paige 350; Story's Eq. secs. 1314, 1315, 1319, 1321–2–3–4. * * *

"In Skinner v. White, (17 J. R.,) above cited, in the court of errors, Yates, Justice, says: 'I cannot accede to the principle that a Court of Chancery is restricted in giving "relief to cases of absolute forfeiture or penalty only." Relief may be granted against the breach of an agreement, not willful or fraudulent, where full compensation can be made, so as to render the party perfectly secure and indemnified, and place him in the same situation as if the occurrence had not happened.'"

The court in Hancock, Adm'r. v. Carlton, 6 Gray (Mass.), 39–53, acknowledged this doctrine as did the same court in Sanborn v. Woodman, 5 Cush. 36, and in Mactier v. Osborn, 146 Mass. 399, 15 N. E. 641, 4 Am. St. Rep. 323.

In Andrews v. Sullivan, 2 Gilman (Ill.), 327, 43 Am. Dec. 53, the court said:

"The doctrine in Equity is not forfeiture, but compensation, and they frequently relieve men who have acted fairly, though negligently, and dispense with that which would make compliance with what the law requires oppressive. 2 Story's Eq. Jur. sec. 775."

This rule was also recognized and applied in Giles v. Austin, 62 N. Y. 486, and in the later case of Noyes v. Anderson, 124 N. Y. 175, 26 N. E. 316, 21 Am. St. Rep. 660. In South Penn Oil Co. v. Edgell, 48 W. Va. 348, 37 S. E. 596, 86 Am. St. Rep. 43, the court quoted approvingly the rule stated in Garner v. Hannah, supra.

In Tibbetts v. Cate, 66 N. H. 550, 22 A. 559, it was

held that plaintiff should be relieved of a forfeiture since her refusal to pay taxes was not, in any true sense, willful.

In Jones v. Robbins, 29 Me. 351, 50 Am. Dec. 593, the court said:

"The party seeking relief from a forfeiture must show, that circumstances, which exclude the idea of willful neglect or of gross carelessness, have prevented a strict compliance, or that it has been occasioned by the fault of the other party, or that a strict compliance has been waived. Hipwill v. Knight, 1 Younge & Collier, 415; Brashier v. Gratz, 6 Wheat. 533 [5 L. Ed. 322]; Wells v. Smith, 2 Edw. Ch. [N. Y.] 78; Dumond v. Sharts, 2 Paige [N. Y.] 182."

The rule is laid down in 10 R. C. L. p. 333, sec. 80, as follows:

"The expression is not infrequently met with that equity will not aid a party in default by relieving him against a forfeiture, if he was negligent or careless in incurring the forfeiture, or if his breach of the contract was willful—willful as thus used, being synonymous with voluntary. Doubtless in some cases where there has been a wanton and inexcusable violation of a covenant, or gross negligence or an intention to perform only in case it suits his interest is evidenced, a party may be precluded from obtaining equitable relief. But as a general proposition, it seems, the mere fact that a party is negligent or willful in not performing a contract in accordance with its conditions, will not close the doors of a court of equity to him in the absence of bad faith, fraud, or other controlling circumstances, at least where the covenant is merely one for the payment of money, as, for instance, a covenant to pay rent."

■ The granting of relief against forfeitures is one of legal discretion, and in view of the fact that the evidence in the case is not before us we cannot say that the learned trial court abused that discretion.

Upon the whole record, we feel that the judgment and decree should be affirmed.

It is so ordered.